**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| WEEKS MARINE, INC. and § | |
| ATLANTIC SOUNDING CO., INC., § | |
| § | |
| Plaintiffs, § | |
| § | |
| v. § | CIVIL ACTION NO. H-03-2285 |
| § | |
| EDUARDO G. RODRIGUEZ, § | |
| § | |
| Defendant. § | |

**FINDINGS OF FACT & CONCLUSIONS OF LAW**

Pending before the Court is Plaintiff/Counter-Defendant Weeks Marine, Inc. and Atlantic Sounding Company, Inc.'s (collectively "Weeks") action for declaratory judgment regarding their potential liability to Defendant/Counter-Plaintiff Eduardo G. Rodriguez ("Rodriguez") for maintenance and cure. Also before the Court are the counterclaims of Rodriguez against Weeks under the Jones Act for negligence, the General Maritime Doctrine for Unseaworthiness, and for maintenance and cure. The claims were tried to this Court on February 27-28, 2006. After considering the testimony of the witnesses, the exhibits in evidence, the parties' arguments, and the applicable law, the Court makes findings of fact and conclusions of law as set out below.[1]

**Findings of Fact**

1. During the relevant time period, Rodriguez was employed by Atlantic Sounding and worked as a deckhand. He was assigned to the dredge GEORGE D. WILLIAMS.

2. The GEORGE D. WILLIAMS was a marine vessel owned and operated by Weeks.

3. A tender tug, the M/V SALLY JAMES, and an anchor barge were used as support vessels operating in the service of the GEORGE D. WILLIAMS.

---

[1] To the extent that any conclusion of law is more properly characterized as a finding of fact, and vice versa, the Court adopts it as such.

4. Rodriguez's job required regularly crossing over from the tender tug to the anchor barge.

5. The standard practice and procedure for crossing from the tender tug to an anchor barge involved slowly pushing the tender tug up against the anchor barge, whereupon the crewmember would step across onto the deck of the barge. This process did not involve the two vessels being secured in any way. This is an ordinary practice in the industry, and is considered a safe practice in calm and/or normal weather conditions.

6. At the time of alleged incident, the waters were choppy and it was dark outside.

7. On January 18, 2003, Rodriguez claims that he was instructed by his supervisor, Osiel Davila, to jump from the tender tug to the anchor barge, which were not secured together. Davila denies providing such an instruction.

8. According to Rodriguez, he complied with Davila's instruction and attempted to jump from the tender tug onto the deck of the anchor barge.

9. Rodriguez maintains that he slipped on the deck of the barge, which caused him to fall and injure his wrist and back. Rodriguez claims that even though he broke his wrist and was knocked unconscious, he somehow was able to hang on to the fender system of the tender tug.

10. In addition to Davila, those present at the time of the alleged accident were Shane Neal, operator of the tender tug, deckhand Benito Vallejo, located on the anchor barge, and the dredge leverman, John Malorin.

11. Rodriguez testified at trial that deckhand Vallejo lifted him up onto the deck of the tender tug. At his deposition, he testified that Vallejo and Neal helped him onto the deck of the tug. Both Vallejo and Neal denied helping Rodriguez onto the deck.

12. Davila, Vallejo, Neal, and Malorin all testified that they did not witness any accident.

13. Rodriguez contends that he showed bruises resulting from his fall to Vallejo and Neal. Both Vallejo and Neal deny ever seeing or being shown bruises.

14. Rodriguez testified that he reported the accident to Captain Ronnie Snider and requested medical attention, but Snider fired him.

15. There is no documentary evidence nor any notes in any of the logbooks that Rodriguez reported the injuries or requested medical attention.

16. After the alleged accident, Rodriguez did not complete an accident report. Rather, he continued to work his shifts without requesting accommodation.

17. Rodriguez was terminated effective January 23, 2003 for poor job performance.

18. After his termination, Rodriguez traveled to Mexico and did not seek medical care until February 13, 2003.

19. Although there is conflicting evidence of both the nature and extent of Rodriguez's back injury, there is little or no evidence as to the origin of the back injury, or whether Rodriguez's condition was caused by an injury at all.

20. Additionally, medical evidence suggests that Rodriguez suffered a fractured wrist, but that the wrist had healed at the point when Rodriguez sought medical attention. In fact, little or no evidence was presented from which the Court could conclude that the wrist fracture occurred as a result of the alleged incident.

21. The Court finds that a significant part of Rodriguez's testimony is not credible. Specifically, the Court notes that portions of Rodriguez's description of the alleged accident are inconsistent, contradicted by testimony of other witnesses, and that his account of the alleged events was otherwise unbelievable.

22. The Court finds that Rodriguez was not injured on January 18, 2003, as alleged.

23. Weeks provided a safe working environment and was not negligent in the operations that took place on January 18, 2003.

24. The M/V SALLY JAMES and the anchor barge were both reasonably fit for their intended use,

furnished with a crew that was reasonably adequate for their assigned tasks, and therefore, were seaworthy.

## Conclusions of Law

1. This is a case of admiralty and maritime jurisdiction as specified in 28 U.S.C. § 1333, Rule 9(h) of the Federal Rules of Civil Procedure. This Court's power to grant a declaratory judgment is conferred by 28 U.S.C. § 2201, *et seq*.

2. At the time of the alleged accident, Rodriguez was a "seaman" as that term is legally defined under the Jones Act.

3. Under the Jones Act, a seaman has a cause of action against his employer for negligence. *Becker v. Tidewater*, 335 F.3d 376, 386 (5th Cir. 2003). The fundamental duty of a Jones Act employer is to provide his qualifying employees with a reasonably safe place to work. *Colburn v. Bunge Towing, Inc.*, 883 F.2d 372, 374 (5th Cir. 1989); *see* Thomas J. Schoenbaum, ADMIRALTY AND MARITIME LAW § 6-21 (4th ed. 2004). A cause of action under the Jones Act arises when this duty is breached.

4. Independent of its duty under the Jones Act, a shipowner or operator of a vessel owes a duty to furnish a seaworthy ship to members of the vessel's crew. *The Osceola*, 189 U.S. 158 (1903); *Mitchell v. Trawler Racer, Inc.*, 362 U.S. 539, 549 (1960). The duty of seaworthiness is absolute, but "it is a duty only to furnish a vessel and appurtenances reasonably fit for their intended use." *Id*. at 550. That is, the duty is reasonableness, not perfection.

5. For a vessel to be found unseaworthy, the seaman must establish a causal connection between his injury and the breach of duty that rendered the vessel unseaworthy. *Jackson v. OMI Corp.*, 245 F.3d 525, 527 (5th Cir. 2001). The standard required to prove causation for unseaworthiness is more strict than for a Jones Act claim of negligence. *Comeaux v. T.L. James & Co., Inc.*, 702 F.2d 1023, 1025 (5th Cir. 1983). Causation in unseaworthiness requires a showing of "proximate causation in the traditional sense." *Id*.

4

6. In addition to a claim for unseaworthiness, a seaman is also entitled to receive maintenance and cure from his employer if he becomes ill or injured during his service to the ship. *Boudreaux v. United States*, 280 F.3d 461, 468 (5th Cir. 2002). A shipowner must pay maintenance and cure to any seaman who becomes ill or injured during his service to the ship, regardless of whether the shipowner was negligent. *Bertram v. Freeport McMoran, Inc.*, 35 F.3d 1008, 1011 (5th Cir. 1994). Thus, to establish a claim for maintenance and cure, a seaman need only show that his injuries occurred while in service to the vessel. *Boudreaux*, 280 F.3d at 468.

7. Rodriguez has the burden of proof on his claims for maintenance, cure, unseaworthiness, and Jones Act negligence.

## Conclusion

Rodriguez's uncorroborated testimony cannot support his burden of proof in this matter. There are too many conflicts in his testimony, too many conflicts in his medical history, and too much evidence that contradicts and/or directly undermines Rodriguez's version of events for Rodriguez to support his burden of proof on the issue of whether he sustained an accident and injury on January 18, 2003. Accordingly, the Court finds that judgment should be entered in favor of Plaintiff/Counter-Defendant Weeks.

It is so ORDERED.

Signed this 27th day of September, 2006.

_____
JOHN D. RAINEY
UNITED STATES DISTRICT JUDGE